IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **LINC USA GP,** *et al.* [1] | ) | Case No. 16-32689 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' RESPONSE TO OBJECTION OF BASIC ENERGY, ET AL.
TO DEBTORS' MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING
BIDDING PROCEDURES; (II) SCHEDULING BIDDING DEADLINE, AUCTION
DATE, AND SALE HEARING DATE; (III) APPROVING FORM AND NOTICE
THEREOF; (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I)
AUTHORIZING THE DEBTORS TO SELL THEIR ASSETS; AND (II) AUTHORIZING
THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF
(relates to Dkt. No. 187)**

Linc USA GP, *et al.*, the above-captioned debtors and debtors in possession (together, the "Debtors"), hereby file this response (this "Response") to the *Objection to Debtors' Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Assets; and (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Dkt. No. 187] (the "Objection") filed by Basic Energy Services, LP, Pioneer Coiled Tubing Services, LLC, Key Energy Services, Inc., New Tech Global Ventures, LLC, and Wood Group PSN, Inc. (collectively the "Lien Creditors"). In support thereof, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter cases, along with the last four digits of each Debtors' federal tax identification number, are: Linc Energy Finance (USA), Inc. (6684); Linc USA GP (5234); Linc Energy Resources, Inc. (9613); Linc Gulf Coast Petroleum, Inc. (6790); Linc Energy Petroleum (Louisiana), LLC (1074); Linc Alaska Resources, LLC (2362); Paen Insula Holdings, LLC (1681); Linc Energy Petroleum (Wyoming), Inc. (9859); Diasu Holdings, LLC (9626); Diasu Oil & Gas Company, Inc. (8926); and Linc Energy Operations, Inc. (5806).

#5262668

## I.  RELEVANT BACKGROUND

1. On June 1, 2016, the Court entered the *Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (the "Interim DIP Order").  Pursuant to the DIP Credit Agreement attached to the Interim DIP Order, the Debtors filed their *Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Assets; and (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* on June 21, 2016 [Dkt. No. 129] (the "Bid Procedures Motion").[2]

2. On July 8, 2016, following discussions among the official committee of unsecured creditors (the "Committee"), the Debtors, and the Secured Parties, the Debtors filed the *Notice of Submission of Revised Proposed Final Bid Procedures Order* (the "Revised Order") [Dkt. No. 184], which, among other things, extended certain deadlines in the Debtors' bid procedures.

## II.  RESPONSE

3. The Debtors believe that several of the Lien Creditors' objections are mooted by the Debtors' Revised Order.  Several of the Lien Creditors' objections, however, ask for relief

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

that is either incompatible with the law, or would otherwise unravel the Debtors' chapter 11 cases.

### A. The Debtors' Bidding Deadline and Auction Dates are Reasonable

4. The Lien Creditors argue that the proposed bidding deadline of August 10, 2016, and the proposed auction date of August 16, 2016, are unreasonable, in part because of their proximity to the hearing on the Bid Procedures Motion and in part because the Debtors have yet to obtain an order allowing them to engage Parkman Whaling as investment banker. *See* Objection ¶¶ 3(a), 24-25. Shortly before the Objection was filed, the Debtors filed the Revised Order, which, at the Committee's request, extends the bidding deadline to August 17, 2016, and the auction to August 23, 2016. The Debtors believe that such an extension effectively moots the Lien Creditors' concerns. Additionally, the Lien Creditors do not take into account the full timeline of Parkman Whaling's engagement in the Debtors' sales process. While the Debtors have yet to obtain an order allowing them to retain Parkman Whaling, Parkman Whaling has already begun to market the Debtors' assets. On June 27, 2016, Parkman Whaling sent out a high-level teaser to approximately 200 potentially interested parties and shortly thereafter set up an electronic data room containing information about the Debtors' assets. As of the date of the Objection, 45 such parties have responded by executing a non-disclosure agreement and gaining access to the data room.

5. Accordingly, the revised bidding deadline of August 17, 2016, is over 50 days from the date Parkman Whaling initially sent out teasers, thereby affording interested parties sufficient time to perform due diligence and enter proposed bids. The Debtors submit that this revised timeline allows the Debtors to maximize the value gained from their sales process.

### B. The Debtors Are Under No Obligation to Allocate the Value of the Individual Assets of the Estate

6.     The Lien Creditors argue that there has been no allocation as to the value of the individual assets of the estate. *See id.* at ¶¶ 3(b), 32. However, the Debtors are under no obligation to provide any such allocation. The allocation of value to the individual assets of the estate is a task reserved for potential purchasers in their proposed asset purchase agreements. Notably, the Debtors do provide a sample allocation in footnote 3 of the bid procedures attached as Exhibit B to the bid procedures motion (*see* Dkt. No. 129-2, n.2), however, any further or different allocation of value is a determination to be made by the potential purchasers, not the Debtors. By way of example, the Stalking Horse APA requires a schedule setting forth the allocation of the purchase price as determined for federal income Tax purposes among the Debtors' oil and gas assets. *See* Stalking Horse APA, Dkt. No. 129-3 § 8.2.

**C.     The Preservation of Credit Bid by the First Lien Lenders is Appropriate**

7.     The Lien Creditors argue that the preservation of credit bid by the First Lien Noteholders will chill the bidding process and, further, that such a right should be denied until there has been a full determination as to the validity, enforceability and priority of the Secured Parties' liens. *See id.* at ¶¶ 3(c), 26-28. The Lien Creditors are mistaken for several reasons.

8.     Section 363(k) of the Bankruptcy Code provides

> [a]t a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). The Lien Creditors seek to deny the First Lien Lenders a right guaranteed to them by the Bankruptcy Code. The Court has not ordered, nor has any party requested that the Court so order, that the First Lien Lenders cannot bid at the auction. Accordingly, the Debtors are bound by section 363(k) of the Bankruptcy Code. The Lien Creditors have not proposed, nor are the Debtors aware of, any basis in law for the First Lien

Lenders' right to credit bid to be denied pending a final determination of the extent, priority and validity of the Secured Parties' liens.  The *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (III) Scheduling Final hearing Pursuant to Bankruptcy Rules 4001 (b) and (c)* provides for a period of 60 days from the entry of such order (or in the Committee's case, 60 days from its formation) in which parties may challenge the Secured Parties' liens.  Waiting until the challenge period ends to allow the First Lien Lenders to retain their credit bid would draw out the bidding process considerably.  Indeed, such a timeline whereby the sales process runs concurrently with the challenge period is common in bankruptcy and, in this case, provides for the most efficient use of the Debtors' limited time and resources.  *See, e.g.*, *In re Sherwin Alumina Company, LLC*, Case No. 16-20012 (DRJ) (Bankr. S.D. Tex. Mar. 16, 2016) (overruling committee's objection seeking to limit lender's credit bid); *In re Alpha Natural Resources, Inc.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Mar. 11, 2016) (authorizing stalking horse credit bid where UCC had filed challenge to lenders' liens); *In re Relativity Fashion, LLC*, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. Sept. 1, 2015) (allowing sales process and challenge period to run concurrently); *In re GMX Resources, Inc.*, Case No. 13-11456 (SAH) (Bankr. W.D. Ok. June 11, 2013) (same).

9. The Lien Creditors do not articulate how the First Lien Lenders' credit bid would chill bidding.  Instead, the First Lien Lenders' credit bid protects the Debtors from below market bids.  Indeed, the First Lien Lenders' credit bid does nothing more than set a floor for future bidding and thereby maximizes the Debtors' use of time and resources by preventing frivolous

bids. In any event, the fact that the Debtors have already executed 45 non-disclosure agreements suggests that the credit bid is not chilling bidding.

10. Lastly, deferring the First Lien Lenders' credit bid right would violate the DIP Credit Agreement, thereby leaving these chapter 11 cases without any source of funding. For these reasons, the Debtors must honor the First Lien Lenders' right to credit bid. *See* DIP Credit Agreement, Dkt. No. 11-1 § 6.14.

### D. The Sales Procedures are Proper

11. The Lien Creditors argue that the sale procedures should be denied, as they contemplate a sale of the Debtors' assets to an affiliate if no higher or better offer is received through the sales process. *See* Objection at ¶ 4. The Lien Creditors err on two grounds. First, the Lien Creditors misunderstand the entity that will receive the assets in the event no higher offer is received. Such entity will not be an affiliate of the Debtors, as the Lien Creditors' objection suggests, but rather a holding company formed by the First Lien Lenders. While such an entity may technically be an affiliate of the First Lien Lenders, this structure for asset sales in bankruptcy is common. Second, there is no "default" sale. Even if the First Lien Lenders' credit bid is the highest and best offer, the Debtors will still need to undergo a sale hearing, at which parties in interest will have the right to object.

12. Lastly, the Lien Creditors argue that the contemplated sale violates any rights and interests that they may have under state law in the event they have priority liens. *Id.* Any argument the Lien Creditors may have regarding the priority of their liens are more properly reserved for the sale hearing instead of the bidding procedures. At the sale hearing the Debtors will demonstrate through testimony and evidence that they may sell the assets free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code. In any

event, nothing in the Bidding Procedures affects the rights of the Lien Creditors to seek an adjudication of their lien priority pursuant to Bankruptcy Rule 7001(2).

### E. The Expense Reimbursement Fee is Reasonable

13. The Lien Creditors argue that the expense reimbursement fee may be unreasonable and is unwarranted, as it does not correlate to the actual and necessary expenses to preserve the value of the estate. *See id.* at ¶¶ 18-23. The form asset purchase agreement defines "Expense Reimbursement" as "an amount equal to the *reasonable* out-of-pocket costs, fees and expenses of Buyer and the ad hoc group of First Lien Lenders . . . ." Dkt. No. 129-1, p. 9 (emphasis added). Reasonableness is accordingly built into the definition of expense reimbursement. Any party objecting to the reasonableness of the actual expense reimbursement will have the opportunity to do so at the sale hearing.

14. The Lien Creditors further assert that the expense reimbursement will chill bidding, yet fail to articulate why this would be the case. *See id.* at ¶ 22. The expense reimbursement will have no effect on potential bidders; instead, it will only determine how much net cash goes to the Debtors' estates. The bidding procedures do not require that a qualifying bid must meet any expense reimbursement. Accordingly, potential bidders are unlikely to be concerned with the expense reimbursement at all.

15. Lastly, the Lien Creditors argue that there should be no expense reimbursement because this case does not involve an independent third party that has undertaken the necessary due diligence to formulate a bona fide purchase of the Debtors' assets. *See id.* at ¶ 23. Again, the Lien Creditors mistake the purchaser affiliate as some entity other than a holding company formulated by the First Lien Lenders specifically for the purchase of the Debtors' assets. The First Lien Lenders have conducted their due diligence and negotiated an asset purchase

agreement; the fact that they will purchase through a holding company does not invalidate their efforts.

**F.     Arguments Regarding 363(b) and 363(f) are Not Appropriate**

16.    The Lien Creditors argue that the procedures contemplate the automatic approval of the Sale Agreement between the Debtors and the First Lien Lenders if the successful bidder fails to consummate its purchase.  The Debtors submit that this argument is more appropriate for the sale hearing, rather than the bidding procedures hearing.  The Debtors also note that the very existence of a sale hearing related to the Sale Agreement belies the notion that any sale will be "automatically" approved.  Notwithstanding that the Lien Creditors propose case law in which the objecting party had liens in excess of the stalking horse—a scenario which is undetermined, if not entirely inapplicable, here, the Debtors submit that arguments surrounding section 363(b) and 363(f) are arguments to be heard at a sale hearing.  The Debtors reserve the right to file a supplemental response in the event the Debtors determine any further or additional response is necessary.

### III.  RESERVATION OF RIGHTS

17.    The Debtors reserve all rights to object to the Lien Creditors' liens at the appropriate time.

## IV.  PRAYER

WHEREFORE, the Debtors respectfully request that the Court deny the Objection, grant the relief requested in the Bid Procedures Motion, and grant such other and further relief to the Debtors as the Court deems just and proper.

    Respectfully Submitted,

    **BRACEWELL LLP**

    By: */s/ Jason G. Cohen*
        Jason G. Cohen
        Texas Bar No. 24050435
        Jason.Cohen@bracewelllaw.com
        William A. (Trey) Wood III
        Texas Bar No. 21916050
        Trey.Wood@bracewelllaw.com
        Chelsea R. Dal Corso
        Texas Bar No. 24092316
        Chelsea.DalCorso@bracewelllaw.com
        711 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone: (713) 223-2300
        Facsimile: (713) 221-1212

    **PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**