**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

ENTERED
09/01/2016

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| LINC USA GP, *et al.*,[1] | )    Case No. 16-32689 (DRJ) |
| | ) |
|        Debtors. | )    (Jointly Administered) |
| | ) |

**ORDER (A) AUTHORIZING AND APPROVING (I) THE ASSET
PURCHASE AGREEMENT FOR THE WYOMING ASSETS; (II) THE
SALE OF THE DEBTORS' WYOMING ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (III) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (B) GRANTING RELATED RELIEF**
[Related to Doc. No. 129]

Upon the motion (the "<u>Sale Motion</u>")[2] of the above captioned debtors and debtors in possession (each, a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Chapter 11 Cases</u>") for, among other things, entry of an order (this "<u>Sale Order</u>") (a) approving the sale (the "<u>Sale</u>") of the Debtors' Wyoming assets, which comprise substantially all of the  oil and gas assets of Debtor Linc Energy Petroleum (Wyoming), Inc. and the related personal property assets of Linc Energy Operations, Inc. (collectively, the "<u>Assets</u>"), free and clear of all liens, claims, encumbrances and interests of any kind to the Successful Bidder(s) and (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "<u>Assigned Contracts</u>") of the Debtors that are to be assumed and assigned to the Successful

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linc Energy Finance (USA), Inc. (6684); Linc USA GP (5234); Linc Energy Resources, Inc. (9613); Linc Gulf Coast Petroleum, Inc. (6790); Linc Energy Petroleum (Louisiana), LLC (1074); Linc Alaska Resources, LLC (2362); Paen Insula Holdings, LLC (1681); Linc Energy Petroleum (Wyoming), Inc. (9859); Diasu Holdings, LLC (9626); Diasu Oil & Gas Company, Inc. (8926); and Linc Energy Operations, Inc. (5806).

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (as defined below) or, if not defined in the Asset Purchase Agreement, the Sale Motion.

#5293169.1

Bidder(s) in connection with the Sale; and the Court having entered an order approving, among other things, the Bidding Procedures (the "<u>Bidding Procedures Order</u>") [Docket No. 205] based upon the evidence presented at the hearing held on July 11, 2016 (the "<u>Bidding Procedures Hearing</u>"); and the Auction having been held in accordance with the Bidding Procedures Order; and at the conclusion of the Auction, Big Muddy Opportunities, LLC (the "<u>Purchaser</u>") having been chosen as the Successful Bidder for the Assets; and upon the Purchaser and Debtors having entered into that certain Asset Purchase Agreement, dated August [26], 2016 (together with all ancillary documents, as may be amended, modified or supplemented, the "<u>Asset Purchase Agreement</u>," attached hereto as **Attachment 1**); and the Court having conducted the Sale Hearing on August 31, 2016; and all parties in interest having been heard or having had the opportunity to be heard regarding the Asset Purchase Agreement; and it appearing that adequate and proper notice of the Sale Motion has been given and that no other or further notice need be given; and the Sale Hearing having been held to consider the relief requested in the Sale Motion; and upon the record of the Sale Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Sale Motion, the Declaration of Bruce E. Campbell III and the testimony adduced at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Jurisdiction</u>.  The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. § 157(b)(1).

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

B.     Venue.  Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. § 1408. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

C.     Statutory Predicates.   The statutory and legal predicates for the relief requested in the Sale Motion are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Bankruptcy Local Rule 2002-1.

D.     Notice.  Notice of the proposed Sale of Assets, Auction and Sale Hearing has been provided to: (i) counsel for the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases; (ii) all parties that expressed interest in the possible purchase of the Assets; (iii) counsel for the Office of the United States Trustee for the Southern District of Texas; (iv) any party recommended by the Committee; (v) counsel for the Stalking Horse Bidder; (vi) all entities known by the Debtors to have filed a notice of appearance or a request for receipt of chapter 11 notices and pleadings filed in the Debtors' Chapter 11 Cases as of the date hereof; (vi) all federal, state and local regulatory and taxing authorities and recording offices which have a known interest in the relief requested in the Motion; (vii) the United States Attorney's Offices for the State of Wyoming; (viii) the Attorney General's Offices for the State of Wyoming; (ix) the United States Securities and Exchange Commission; (x) all holders of possible Preferential Purchase Rights and all counterparties to the Assigned Contracts; (xi) all other parties on the Debtors' Master Service List; (xii) counsel to the administrative agent under the DIP Facility (as defined in the DIP Order); (xiii) counsel to the First Lien Indenture Trustee (as defined in the DIP Order); (xiv) counsel to the Second Lien Indenture Trustee (as defined in the DIP Order); (xv) counsel to the ad hoc group of First Lien Lenders and the DIP Lenders;

-3-

(xvi) any entity known or reasonably believed to have asserted a security interest in or lien against any of the Assets (and their counsel, if known); and (xvii) the Internal Revenue Service (collectively, the "Notice Parties"), all in accordance with and as provided by the Bidding Procedures Order.  Cure Notices have been provided to all counterparties to Assigned Contracts and publication notice of the Auction and the Sale was provided through the New York Times, in each case, in accordance with and as provided by the Bidding Procedures Order.

E.      Notice Sufficient.  Based upon the affidavits of service previously filed with the Court and the evidence presented at the Sale Hearing, adequate and sufficient notice of the Sale Motion, Auction, Sale Hearing, the Sale, and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, has been provided in accordance with the Bidding Procedures Order, sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9006 and Bankruptcy Rule 2002-1.  A reasonable opportunity to object and be heard with respect to the Sale, the Sale Motion and the relief requested therein, including the assumption and assignment of the Assigned Contracts to the Purchaser and the amounts necessary under section 365(b) of the Bankruptcy Code to cure defaults thereunder, as such amounts have been transmitted pursuant to a written notice delivered to the applicable counterparty, and the exercise of alleged Preferential Purchase Rights, has been afforded to all interested persons and entities, including the Notice Parties.

F.      Assets Property of the Estates.  The Assets sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Asset Purchase Agreement are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

G.    Sufficiency of Marketing.   The Debtors and their professionals marketed the Assets and conducted the marketing and sale process as set forth in and in accordance with the Sale Motion and the Bidding Procedures.  Based upon the record of these Chapter 11 Cases, all creditors and other parties in interest (including all holders of alleged Preferential Purchase Rights) and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets  or to seek to exercise such alleged Preferential Purchase Rights, as the case may be.   Under the circumstances, the Debtors and their professionals have adequately and appropriately marketed the Assets.

H.    Bidding Procedures.    The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Assets.  The Debtors conducted the sale process (including the Auction) without collusion and in accordance with the Bidding Procedures.

I.    Auction.  After the conclusion of the Auction held on August 23, 2016, the Debtors determined in a valid and sound exercise of their business judgment that the highest and best Qualifying Bid for the Assets was that of the Purchaser as contemplated in the Asset Purchase Agreement.

J.    Preferential Purchase Rights.    Each holder of an alleged Preferential Purchase Right that did not timely submit a Preferential Purchase Right Notice (as defined in the Bidding Procedures) is deemed to have (i) forever waived such Preferential Purchase Right in connection with the Sale and (ii) consented to the relief granted in the Sale Motion and the Sale, free and clear of such Preferential Purchase Right (the "Waived Preferential Purchase Rights").

#5293169.1

K.      <u>Corporate Authority</u>.  Subject to the entry of this Sale Order, the Debtors: (i) have full power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby; (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement (collectively, the "<u>Transactions</u>"), and (iii) have taken all company action necessary to authorize and approve the Asset Purchase Agreement and the sale of the Assets, and any actions required to be performed by the Debtors in order to consummate the Transactions contemplated in the Asset Purchase Agreement.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement or this Sale Order, are required for the Debtors to consummate the Sale.

L.      <u>Arm's-Length Sale and Purchaser's Good Faith</u>.  The Asset Purchase Agreement was negotiated and is undertaken by the Debtors and the Purchaser at arm's-length without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Neither the Purchaser nor any of its affiliates, members, officers, directors, or shareholders is an "insider" of any of the Debtors as that term is defined by section 101(31) of the Bankruptcy Code.  The Purchaser (i) recognized that the Debtors were free to deal with any other party interested in acquiring the Assets, (ii) complied with the Bidding Procedures Order and (iii) willingly subjected its bid to the competitive Bidding Procedures approved in the Bidding Procedures Order.  All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed, the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction, and no common identity of directors or controlling stockholders exists between the Purchaser and the Debtors.  As a result of the foregoing, the Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the

protections afforded thereby, including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the Sale specifically and these Chapter 11 Cases generally.

M. <u>Sale Highest or Best Offer</u>. The offer submitted by the Purchaser for the Assets as reflected in the Asset Purchase Agreement, including the form and total consideration to be realized thereunder, is the highest and best offer for the Assets. No other person or entity or group of persons or entities has offered to purchase the Assets for an amount that would provide greater value to the Debtors than the Purchaser, including through the reduction of claims against the estates. The Court's approval of the Motion, the Asset Purchase Agreement, and the Transactions maximizes the Debtors' recovery for the Assets, and, thus, is in the best interests of the Debtors and their estates, creditors and all other parties in interest.

N. <u>No Fraudulent Transfer</u>. The Purchase Price constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable law, and may not be avoided under section 363(n) or any other section of the Bankruptcy Code. The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser has entered into the Asset Purchase Agreement or is consummating the Sale with any fraudulent or otherwise improper purpose.

O. <u>No Liability under Section 363(n)</u>. Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Asset Purchase Agreement or the

-7-

#5293169.1

consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

      P.    <u>Transfer of Assets Free and Clear</u>.  The Debtors are the sole and lawful owner of the Assets.  Subject to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Asset Purchase Agreement, the transfer of each of the Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of, among other things, (i) all Liens, except for certain Permitted Encumbrances that expressly survive the Closing pursuant to the Asset Purchase Agreement (the "<u>Surviving Liens</u>"), (ii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Debtors' Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtors' or the Purchaser's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction on use, voting, transfer, receipt of income or other exercise of any attributes of ownership (collectively, as defined in this clause (ii), "<u>Claims</u>"), relating to, accruing or arising any time prior to or on the Closing Date,

#5293169.1

with the exception of Assumed Liabilities and (iii) any Waived Preferential Purchase Rights (collectively with subsections (i) and (ii) above, the "Interests").

      Q.     Free and Clear Findings Required by Purchaser.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the Assets to the Purchaser were not free and clear of any and all Interests (other than Surviving Liens or Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code, or if the Purchaser would, or in the future could, be liable for any of such Interests.  Effective upon the Closing Date, the Purchaser shall not be responsible for any Interests (other than Surviving Liens or Assumed Liabilities), including in respect of the following:  (i) labor or employment agreements; (ii) all mortgages, deeds of trust, and security interests; (iii) any intercompany loans and receivables between the Debtors and any non-Debtor affiliate; (iv) any welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor, any affiliate of any Debtor, or any member of the Debtors' "control group;" (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C §§ 2101 et. seq., or (l) any other state or

federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (vi) Interests arising under any environmental, health and safety laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date and any liabilities of the Debtors other than the Assumed Liabilities; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all Interests arising out of violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. A sale of the Assets other than one free and clear of all Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement maximizes the Debtors' recovery on the Assets, and, thus, is in the best interests of the Debtors and their estates, creditors and all other parties in interest.

R.     Satisfaction of Section 363(f) Standards. The Debtors may sell the Assets free and clear of all Interests because, with respect to each creditor or other person or entity asserting an Interest, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Sale Motion and those holders of Waived Preferential Purchase Rights are deemed to have consented to the Sale Motion and Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object or that exercised an alleged Preferential Purchase Right fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

S.    No Successor Liability.   The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between the Purchaser and the Debtors. The conveyance of the Assets does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.  To the fullest extent of the law, the Purchaser's acquisition of the Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets.  The Purchaser would not have acquired the Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

T.    Assigned Contracts.  Each and every provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assigned Contract has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtors or the Purchaser as a result of the assumption and/or assignment of the Assigned Contracts.  All counterparties of the Assigned Contracts who did not or do not timely file an objection to the assumption and assignment of the Assigned Contract(s) to which they are counterparty are

#5293169.1

deemed to consent to the assumption by the Debtors of their respective Assigned Contract(s) and the assignment thereof to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.  Upon the assignment and sale to the Purchaser, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer.  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the consummation of the Sale of the Assets, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assigned Contracts being assigned to the Purchaser are an integral part of the Sale of the Assets and, accordingly, their assumption and assignment are reasonable and an enhancement to the value of the Debtors' estates.

U.    Cure/Adequate Assurance.  Pursuant to the Asset Purchase Agreement, the Cure Costs will be paid by Purchaser as "Assumed Liabilities" under the Asset Purchase Agreement.  The Purchaser has demonstrated adequate assurance of future performance of all Assigned Contracts within the meaning of section 365 of the Bankruptcy Code, including its promise to perform the Debtors' obligations under the Assigned Contracts for periods on and after the Closing.  The Cure Costs are deemed the amounts necessary to "cure" all "defaults" (each, within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts.  Any objections to the Cure Costs, to the extent not otherwise resolved, are hereby

-12-

overruled.  To the extent that any counterparty failed to timely object to its Cure Cost or the assignment of its Assigned Contract or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Assigned Contract(s) to the Purchaser and to have waived any other defaults or breaches.  The payment of the Cure Costs as provided in the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Purchaser, of each of the Assigned Contracts.

      V.    <u>Assets Assignable</u>.  Any contractual provision or applicable non-bankruptcy law that purports to prohibit, restrict, or condition assignment of any of the Assets has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

      W.    <u>Sale as Exercise of Business Judgment</u>.  Entry into and consummation of the Asset Purchase Agreement constitute the exercise by the Debtors of sound business judgments, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Assets to the Purchaser.  Additionally: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement and the closing thereon presents the best opportunity to realize the maximum value of the Assets and avoid a decline and devaluation of the Assets; (iii) there is risk of deterioration of the value of the Assets if the Sale is not consummated promptly; and (iv) the Asset Purchase Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.  The Debtors have demonstrated

compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

    X. <u>Compelling Reasons for an Immediate Sale</u>.  Good and sufficient reasons for approval of the Asset Purchase Agreement have been articulated by the Debtors.  The Debtors have demonstrated compelling circumstances for the Sale outside: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to preserve and to maximize the value of the Debtors' estates.  To maximize the value of the Assets and to preserve the viability of the businesses to which the Assets relate, it is essential that the Sale occur promptly.  Time is of the essence in consummating the Sale.

    Y. <u>No Sub Rosa Plan</u>.  The Sale does not constitute a *sub rosa* chapter 11 plan.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization for the Debtors.

    Z. <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

  **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

    1. <u>Sale Motion Granted</u>.  The relief requested in the Sale Motion is GRANTED and the Sale of the Assets to Purchaser is approved, all as set forth in this Sale Order.

    2. <u>Objections Overruled</u>.  All objections, if any, with regard to the relief sought in the Sale Motion that have not been withdrawn, waived, settled or otherwise dealt with as

#5293169.1

expressly provided herein or on the record at the Sale Hearing are hereby overruled on the merits, with prejudice.

3.      Approval.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Asset Purchase Agreement, the assumption and assignment of the Assigned Contracts to the Purchaser as of the Closing Date and the Sale of the Assets and the other transactions contemplated thereby are hereby approved in all respects.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors and their officers, agents, professionals and other representatives are authorized and directed to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement, and to consummate the Sale, including the sale, transfer and assignment of all of the Debtors' right, title and interest in the Assets to the Purchaser free and clear of any and all Interests (other than Surviving Liens and the Assumed Liabilities) in accordance with the terms of the Asset Purchase Agreement and the Sale Order. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, the Purchaser and each of their respective officers, directors, employees, professionals, agents and other representatives are each hereby authorized and directed to take any and all actions necessary or appropriate to:  (a) consummate the Sale of the Assets to the Purchaser and the Closing of the Sale, pursuant to the Asset Purchase Agreement and this Sale Order, (b) assume and assign the Assigned Contracts to be assumed and assigned to the Purchaser as of the Closing Date, and (c) perform, consummate, implement and close fully the Asset Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement.  The Debtors are hereby authorized and directed to perform each of their respective covenants and undertakings as provided in the Asset Purchase Agreement prior to or after the Closing of the Sale without further order of the Court.

#5293169.1

The Purchaser and the Debtors shall have no obligation to close the Sale except as is contemplated and provided for in the Asset Purchase Agreement.

4. <u>Transfer Free and Clear</u>. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, upon the Closing, neither the Purchaser nor its respective successors and assigns shall have any liability for any Interest, except for Surviving Liens and Assumed Liabilities, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether as a successor, vicariously or otherwise, of any kind, nature or character whatsoever, including for any Interests arising under, without limitation:  (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Debtors and any non-Debtor affiliate; (iv) any welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any affiliate of any Debtor, or any member of the Debtors' "control group;" (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C §§ 2101 <u>et</u>. <u>seq</u>., or (l) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors;

-16-

(vi) Interests arising under any environmental, health and safety laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date and any liabilities of the Debtors other than the Assumed Liabilities; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all Interests arising out of violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. Any Interests shall attach to the cash proceeds of the Transactions with the same validity, extent and priority as immediately prior to the Transactions, subject to any rights, claims and defenses that the Debtors and other parties in interest may possess with respect thereto.

5.     Surrender of Possession.  Any and all Assets in the possession or control of any person or entity, including any vendor, supplier or employee of the Debtors, shall be transferred to the Purchaser free and clear of all Interests, except for Surviving Liens and Assumed Liabilities, and shall be delivered to the Purchaser and deemed delivered at the time of Closing (or such other time as provided in the Asset Purchase Agreement).

6.     Valid Transfer.  Effective upon the Closing, the transfer to the Purchaser of the Debtors' right, title and interest in the Assets pursuant to the Asset Purchase Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' right, title and interest in the Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Assets, free and clear of all Interests (other than Surviving Liens or Assumed Liabilities).

#5293169.1

7.     <u>Exculpation and Release of Purchaser</u>.  None of the Purchaser or any of its members or their respective affiliates, successors, assigns and advisors shall have or incur any liability to, or be subject to any action by the Debtors, their estates or any of their predecessors, successors or assigns, arising out of the negotiation, due diligence in respect of, preparation, execution or delivery of the Asset Purchase Agreement, and the entry into and consummation of the Sale, other than (with respect to the Purchaser only) the Assumed Liabilities being assumed by the Purchaser.

8.     <u>Exculpation and Release of Debtors</u>.  Except for the enumerated rights and obligations of the Debtors and the Purchaser under the Asset Purchase Agreement, the Purchaser, to the extent permitted by law, is hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Debtors and their affiliates, and all their past, present and future shareholders, partners, members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interests or causes of action whatsoever at law or in equity, known or unknown, which the Purchaser or its affiliates might now or subsequently may have, based on, relating to or arising out of the Asset Purchase Agreement, the transactions contemplated thereby, the ownership, use or operation of the Assets or the condition, quality, status or nature of the Assets, including rights to contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, breaches of statutory or implied warranties, nuisance or other tort actions, rights t punitive damages, common law rights of contribution and rights under insurance maintained by the Debtors or any of their affilaites.

-18-

9.     <u>Injunction</u>.  Except as expressly provided in the Asset Purchase Agreement or this Sale Order, effective upon the Closing all persons and entities, including, but not limited to, all debt security holders, equity security holders, holders of Preferential Purchase Rights, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons holding Interests (other than Surviving Liens or Assumed Liabilities) against or in the Debtors or the Debtors' interests in the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise), shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Purchaser or any of its members or their respective affiliates, agents, advisors, representatives, officers, successors and assigns, the Assets, or the interests of the Debtors or the Purchaser in such Assets, including, without limitation, taking any of the following actions with respect to an Interest (other than, with respect to the Purchaser only, the Surviving Liens and Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against such parties or Assets; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against such parties or Assets; (c) creating, perfecting or enforcing any liens, claims, encumbrances or other interests against such parties or Assets; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its affiliates, agents, advisors, representatives, officers, successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or

-19-

taken in respect thereof.  All persons are hereby enjoined from taking any action that would interfere with or adversely affect the Debtors' ability to transfer the Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.  Following the Closing, no holder of an Interest (including as such term is used in section 363(f)) against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Assets.

10.    Good Faith Purchaser.  The Asset Purchase Agreement has been entered into by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Assets as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization of the Sale provided herein shall neither affect the validity of this Sale nor the transfer of the Assets to Purchaser, free and clear of Interests, unless such authorization is duly stayed before the Closing pending such appeal.  The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

11.    No Bulk Sales.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Asset Purchase Agreement, the Sale Motion and this Sale Order.

12.    Fair and Equivalent Value.  The consideration provided by the Purchaser for the Assets under the Asset Purchase Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

13.    Transfer of Marketable Title.  Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment,

-20-

conveyance and transfer of all of the Debtors' right, title and interest in the Assets and/or a bill of sale transferring good and marketable title in such Assets to the Purchaser at the Closing pursuant to the terms of the Asset Purchase Agreement, free and clear of all Interests (other than Surviving Liens or Assumed Liabilities).

14.    <u>No Successor Liability</u>.   The consummation of the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or their estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.  Upon the Closing, to the fullest extent of the law, the Purchaser's acquisition of the Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of the Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets.  The transfer of the Assets to the Purchaser, except as otherwise set forth in the Asset Purchase Agreement, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to operation of the Debtor's businesses prior to the Closing.

15.    <u>Authorization to Assign</u>.  Pursuant to section 365(f) of the Bankruptcy Code, and notwithstanding any provision of any contract governing the Assets or any Assigned Contract to be assumed and assigned to the Purchaser or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assets or the Assigned Contracts, the Debtors are authorized to (a) assign, sell and transfer the Assets to the Purchaser and (b) assume and assign

the Assigned Contracts to the Purchaser, which assignments shall take place on and be effective as of the Closing Date or as otherwise provided by a separate order of this Court.

      a.     There shall be no accelerations, assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assets and the Assigned Contracts.

      b.     The Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts to be assumed and assigned to the Purchaser as of Closing.  Notwithstanding the foregoing, unless required by the Purchaser under the Asset Purchase Agreement, no Debtor shall be required by the Court to assume and assign any Assigned Contracts, and, if no such assumption and assignment occurs, no Cure Costs shall be due and no adequate assurance of future performance shall be required.

      c.     The Debtors' assumption of the Assigned Contracts is subject to the consummation of the Sale of the Assets to the Purchaser.  To the extent that an objection by a counterparty to any Assigned Contract, including an objection related to the applicable Cure Cost, is not resolved prior to the Closing, the Purchaser, may, without any further approval of the Court or notice to any party, elect to (i) not have the Debtors assume and assign such Assigned Contract to it or (ii) have the Debtors postpone the assumption of such Assigned Contract until the resolution of such objection; provided that the Debtors, the Purchaser, and the relevant non-debtor counterparty under each Assigned Contract shall have authority to compromise, settle or otherwise resolve any objections to proposed Cure Costs without further order of the Bankruptcy Court, with any such agreed upon Cure Costs being paid to the appropriate counterparty as a condition subsequent to such assumption and assignment of the relevant Assigned Contract.

-22-

d.    The Debtors are authorized to execute and deliver to the Purchaser such agreements, documents and other instruments as may facilitate or document the sale, assignment, transfer, conveyance and delivery of the Assigned Contracts to the Purchaser.

16.    <u>Assigned Contracts</u>.  As of the Closing, subject to the provisions of this Sale Order, the Purchaser shall succeed to the entirety of the Debtors' rights and obligations in the Assigned Contracts to be assumed and assigned to the Purchaser first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.  Each non-Debtor party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors or the Purchaser, or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement, including the Sale and the assumption and assignment of the Assigned Contracts.  Any party that may have had the right to consent to the assignment of an Assigned Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to object to the assumption and assignment of such Assigned Contract.

a.    Upon Closing, (i) all defaults (monetary and non-monetary) under the Assigned Contracts shall be deemed cured and satisfied in full through the payment of the Cure Costs, (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assigned Contracts and (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, the

#5293169.1

Purchaser, or the Assets, that any additional amounts are due or that any defaults exist under the Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing, whether declared or undeclared, or known or unknown.  The Purchaser's promise pursuant to the terms of the Asset Purchase Agreement to pay the Cure Costs and to perform the Debtors' obligations under the Assigned Contracts for the period on or after the Closing shall constitute adequate assurance of its future performance under the Assigned Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(B) of the Bankruptcy Code.

       b.      Upon assumption of the Assigned Contracts, such Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to the Purchaser notwithstanding any provision in such Assigned Contracts or other restrictions prohibiting assignment or transfer.  The assumption and assignment of the Assigned Contracts as authorized under this Sale Order will not take effect until the Closing.  Furthermore, other than Assigned Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of such Assigned Contract.

       c.      All counterparties to the Assigned Contracts to be assumed and assigned to Purchaser as of the Closing shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Debtors or the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by

-24-

#5293169.1

any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

   d. Notwithstanding the foregoing, in accordance with and pursuant to the terms and conditions of Section 2.5 of the Asset Purchase Agreement, the Debtors may, at the Purchaser's direction, amend the list of Assigned Contracts and designate any Assigned Contract as an Excluded Contract without further Court order.

   17. <u>1000 Louisiana</u>. Notwithstanding the foregoing or anything to the contrary herein, the Wyoming Assets shall not include any of the Debtors' interests, if any, in any funds held by 1000 Louisiana, LP ("<u>1000 Louisiana</u>") as a security deposit pursuant to and/or in connection with that certain Office Lease between 1000 Louisiana, LP and the Debtor, dated March 9, 2012 (the "<u>Office Lease</u>").  The Sale shall in no way affect or alter any party's rights or interests in or title to any funds held by 1000 Louisiana as a security deposit pursuant to and/or in connection with the Office Lease, as such rights or interests in or title to such funds may be determined or established under the Office Lease, the Bankruptcy Code, any other order(s) of this Court, or applicable law.

   18. <u>Federal Oil and Gas Leases</u>. Any assignment and/or transfer of any interests in federal oil and gas lease(s) (the "<u>Federal Lease(s)</u>") will be ineffective absent the consent of the United States.  In order to obtain the consent of the United States to any assignment and/or transfer, any and all existing Federal Lease(s) defaults, if any, including any outstanding royalties due under Federal Lease(s) must be cured or the prospective assignee and/or transferee must provide adequate assurance that the defaults will be promptly cured.  Nothing in this Order or the Purchase and Sale Agreement shall be interpreted to set cure amounts for Federal Lease(s) or to require the United States to novate or otherwise consent to the assignment and/or transfer of

-25-

any interests in the Federal Lease(s).  Except to the extent already paid by the Debtor, the obligations for any Cure Amounts owed to the United States are ratified and assumed, and each Cure Amount shall be paid in full, in cash, by the later of (a) the Closing or (b) when due in the ordinary course.  If the Purchaser does not pay any Cure Amount by the deadline set forth above, the Debtor will pay late payment charges on the untimely payment at the rate established at 30 C.F.R. § 1218.54.  Notwithstanding any other provision herein or in the Purchase and Sale Agreement, the United States will retain, and have, the right to audit and/or perform any compliance review, and if appropriate, collect from the Debtor or its successors and assigns (including reorganized Debtor and the Purchaser) any additional monies owed by the Debtor prior to the assumption and assignment of the Federal Lease(s) without those rights being adversely affected by these bankruptcy proceedings.  The Debtor, and Purchaser, and their successors and assigns (including reorganized Debtor) will each individually retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination; *provided, however*, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by Office of Natural Resources Revenue. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. §§ 1701, et seq.).  Nothing in the Sale Order or the Asset Purchase Agreement limits any plugging and abandonment obligations and financial assurance requirements under the Federal Lease(s) as determined by the Department of the Interior of the United States, that must be met by the Debtor or its successors and assigns (including the reorganized Debtor and the Purchaser) on the Federal Lease(s) going forward.

#5293169.1

19.     <u>Police or Regulatory Power</u>.  Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order.  Nothing in this Sale Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

20.     <u>Release of Interests</u>.  Effective upon the Closing, this Sale Order:  (a) is and shall be effective as a determination that all Interests (other than Surviving Liens or Assumed Liabilities) of any kind or nature whatsoever existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; (b) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets conveyed to the Purchaser, and all recorded Interests (other than Surviving Liens or Assumed Liabilities) against the Assets shall be deemed stricken from such entities' records, official and otherwise.

21.    <u>Approval to Release Interests</u>.  If any person or entity that has filed financing statements, mortgages, mechanic's liens or other documents or agreements evidencing Interests in, Liens on, or Claims against the Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, the appropriate documentation with respect to the release of such Interests, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.  The Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the Assets other than the Surviving Liens and the Assumed Liabilities.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

22.    <u>Allocation of Assets</u>.  The Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Assets, including the Assigned Contracts, among its affiliates, designees, assigns, and/or successors, in a manner as it in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Assets, including the Assigned Contracts, to its affiliates, designees, assignees and/or successors with all of the rights and protections accorded to the Purchaser under this Sale Order and the Asset Purchase Agreement with respect thereto.  The Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

23.    <u>Governmental Authorization to Effectuate Sale and Assignments</u>.  Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to

-28-

consummate the transactions contemplated by the Asset Purchase Agreement.  No governmental unit may revoke or suspend any lawful right, license, trademark or other permission relating to the use of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Transactions.  For the avoidance of doubt, the Sale of the Assets authorized herein shall be of full force and effect, regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

24.     <u>Inconsistencies with Prior Orders, Pleadings or Agreements</u>.  To the extent this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern.  To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

25.     <u>Binding Effect of Sale Order; Subsequent Orders</u>.  This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims or other Interests in, against or on all or any portion of the Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, all successors and assigns to the Assets and any trustee, examiner, "responsible person" or other fiduciary appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.  The Asset Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted

to the Purchaser hereunder, shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on parties in interest. This Sale Order shall not be modified by any chapter 11 plan confirmed in these Chapter 11 Cases or any subsequent order(s) of this Court.

26. <u>Failure to Specify Provisions</u>.   The failure specifically to include or make reference to any particular provisions of the Asset Purchase Agreement or any related ancillary document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and all related ancillary documents are authorized and approved in their entirety.

27. <u>Retention of Jurisdiction</u>.   The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Sale Order, including, without limitation, the authority to:  (i) interpret, implement and enforce the terms and provisions of this Sale Order (including the exculpation, release and injunctive provisions in this Sale Order) and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder; (ii) protect the Purchaser, or the Assets, from and against any Interests (other than Surviving Liens or Assumed Liabilities); (iii) compel delivery of all Assets to the Purchaser; (iv) compel the Debtors and the Purchaser to perform all of their respective obligations under the Asset Purchase Agreement; and (v) resolve any disputes arising under or related to the Asset Purchase Agreement or the Sale.

28. <u>Automatic Stay</u>. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other sale-related document.  The automatic stay

#5293169.1

imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order.

29.     <u>No Material Modifications</u>.   The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u>, <u>however</u>, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby.

30.     <u>Immediate Effect</u>.   This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding any provision in the Bankruptcy Rules to the contrary, the Court expressly finds there is no reason for delay in the implementation of this Sale Order and, accordingly:   (i) the terms of this Sale Order shall be immediately effective and enforceable upon its entry and the fourteen (14) day stay provided in Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d) is hereby expressly waived and shall not apply; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Sale Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Sale Order.

31.     <u>Provisions Non-Severable</u>.   The provisions of this Sale Order are nonseverable and mutually dependent.

32.     <u>Back-up Bidder</u>.   Arctic Acquisition, Inc. is hereby declared the Back-up Bidder (as defined in the Bidding Procedures) for the Assets.   Subject to, and in accordance with, the terms of this Sale Order and the Bidding Procedures, the Debtors are authorized to consummate, complete and close the sale of the Assets and the assumption and assignment of the Assigned

#5293169.1

Contracts to the Back-up Bidder in the event that the sale to the Purchaser as contemplated by the Asset Purchase Agreement does not close for any reason whatsoever, upon subsequent application and further order of this Court.

33.    <u>Satisfaction of Conditions Precedent</u>.  Neither the Purchaser nor the Debtors shall have an obligation to close the Transactions until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Transactions have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

Signed:

9-31-2016.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

#5293169.3

## ATTACHMENT 1

## ASSET PURCHASE AGREEMENT